IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MORRIS B. HOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-303-ECM-SMD |
| | ) | |
| MICHAEL DOZIER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pro se Plaintiff Morris B. Holley ("Holley") brings this 42 U.S.C. § 1983 action against Elmore County Circuit Court Clerk Michael Dozier ("Dozier") and fictitious defendants A through V.[1] In his complaint, Holley alleges that Dozier, along with other clerks and employees in the Elmore County Circuit Court Clerk's Office, "falsely told him that his petition for a writ of prohibition"—which challenged the attempted elimination of his position as constable—"was still pending when it in fact had been denied." Compl. (Doc. 1) p. 2 ¶ 1. Holley contends that because he was delayed in discovering that his writ had been denied, the time for his appeal expired, which violated his rights of access to the courts, due process, and equal protection. *Id*. Based on these allegations, Holley seeks declaratory relief and compensatory damages. *Id*. ¶¶ 12-14.

---

[1] "[F]ictitious-party pleading is not permitted in federal court," *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010), and Holley has not identified or described the fictitious defendants with a sufficient degree of specificity for the undersigned to conclude that discovery would allow him to learn their names or serve process on them. Thus, the undersigned recommends that the claims against "Fictitious Defendants A through V" be dismissed.

Dozier moves to dismiss Holley's complaint under Rules 12(b)(1) and 12(b)(6), arguing that the claims against him in his official and individual capacities are barred by Eleventh Amendment, quasi-judicial, and qualified immunity. Mot. (Doc. 6). For the following reasons, Dozier's motion should be granted with respect to the official capacity claims and denied with respect to the individual capacity claims.

I.  **FACTUAL BACKGROUND**[2]

In July 2021, Holley, who was the Elmore County Constable, filed for a writ of prohibition in the Elmore County Circuit Court alleging that "the respondents . . . had usurped jurisdiction in their attempt to abolish the office of constable in Elmore County, Alabama." Compl. (Doc. 1) p. 4 ¶ 6. Holley inquired with unidentified individuals in the Elmore County Circuit Court Clerk's Office about the status of his writ on a weekly basis. *Id.* ¶ 7. On October 9, 2021, the Elmore County Circuit Court entered an order denying the writ. *Id.* ¶ 9. Holley received no notice of the denial via mail. *Id.* ¶ 10.

After continued "persistent weekly inquiries" about the status of his writ, Holley "received an order dated December 27, 2021[,] setting the case . . . for a status conference for January 31, 2022." *Id.* p. 5 ¶ 12. When Holley appeared at the status conference, he was informed for the first time that his case had been dismissed on October 9, 2021. *Id.* ¶ 13.

On February 2, 2022, Holley filed a motion for reconsideration of the dismissal order, citing the fact that "he had been just informed of the dismissal two days beforehand." *Id.* ¶ 14. When the Elmore County Circuit Court did not rule on the motion, Holley, on

---

[2] The undersigned sets forth Holley's well-pleaded factual allegations and accepts them as true for purposes of Dozier's motion to dismiss.

2

April 15, 2022, "inquired with [Dozier] about the status of his motion for reconsideration," and "[Dozier] informed him that there would not be a ruling on this motion." *Id.* ¶ 15. On that same day, Holley filed a motion for final judgment. *Id.* ¶ 16. The Elmore County Circuit Court did not rule on Holley's motion for final judgment. Thus, ninety days later, on July 15, 2022, the judgment in the Elmore County Circuit Court became final pursuant to the Alabama Rules of Civil Procedure.[3] *Id.* pp. 5-6 ¶¶ 16, 19.

On July 29, 2022, Holley filed a notice of appeal in the Alabama Court of Civil Appeals. *Id.* p. 6 ¶ 20. The Alabama Supreme Court ultimately "dismissed the appeal on jurisdictional grounds[] that [Holley's] notice of appeal was not timely." *Id.* ¶ 21. Holley moved for a rehearing of the dismissal, arguing that because the defendants "repeatedly lied to him that the case was still pending when in fact it was dismissed," he was delayed 115 days in discovering that his case was dismissed, which caused him to miss his time for appeal. *Id.* ¶ 22. Specifically, Holley alleges that "[b]etween October 9, 2021[,] and January 31, 2022, the defendants repeatedly and falsely told [him] that his writ was still pending and withheld that a judgment had been entered." *Id.* p. 7 ¶ 27. The Alabama Supreme Court "'overruled' his petition for rehearing." *Id.* p. 6 ¶¶ 22-23.

## II.   PARTIES AND CLAIMS

Count I is a claim for "Denial of Constitutional Right of Access to the Courts." *Id.* pp. 7-10 ¶¶ 28-37. Holley alleges that Dozier violated his right of access to the courts by

---

[3] The Alabama Rules of Civil Procedure state that no postjudgment motion shall remain pending in the trial court for more than 90 days and the failure of the trial court to render an order disposing of a postjudgment motion constitutes a denial of the motion upon expiration of the 90 days. ALA. R. CIV. P. 59.1.

not notifying him that his writ had been denied, thus leading to the delay that precluded him from appealing.

Count II is a due process claim. *Id.* p. 10 ¶¶ 38-42. Holley alleges that by lying to him about the status of the writ, Dozier violated his right to appeal and therefore denied him due process of law.

Count III is an equal protection claim. *Id.* pp. 11-12 ¶¶ 43-49. Holley alleges that by falsely stating that the writ was pending, Dozier violated his right to appeal and therefore denied him equal protection of the law.

### III. JURISDICTION

Because § 1983 claims arise under federal law, this Court has federal question jurisdiction over Holley's claims. 28 U.S.C. § 1331.

### IV. MOTION TO DISMISS STANDARDS

Dozier moves to dismiss Holley's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. (Doc. 6) p. 1.

**A. Dismissal Under Rule 12(b)(1)**

Under Rule 12(b)(1), a court must dismiss an action if it lacks subject matter jurisdiction to hear the plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998). Attacks on subject matter jurisdiction come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint require 'the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'" *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). In a facial attack, the

4

allegations in the complaint "are taken as true for purposes of the motion." *Id.* (quoting *Menchaca*, 613 F.2d 507). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (quoting *Menchaca*, 613 F.2d 507). "[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010); *see also Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1231 (N.D. Ala. 2012) (applying Rule 12(b)(1) standard to a motion to dismiss because the defendant's immunity arguments were not inextricably intertwined with material facts affecting the merits of the claim).

**B. Dismissal Under Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To determine whether a plaintiff has stated a claim, the court should first "eliminate any allegations in the complaint that are merely legal conclusions" and then determine whether the well-pleaded factual allegations of the complaint—assuming their veracity—"plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Hardy v. Broward Cnty. Sheriff's Office*, 238 F. App'x 435, 439 (11th Cir. 2007) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)). In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 856 (11th Cir. 2023).

## V. PRO SE STANDARD

Federal courts must "show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (italics omitted). "A document filed pro se is 'to be liberally construed,' and a pro se complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). However, the leniency shown to pro se plaintiffs "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc.*, 132 F.3d at 1369 (citations omitted). A pro se complaint must still be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

6

## VI. ANALYSIS

Dozier argues, *inter alia*, that Eleventh Amendment immunity bars the official capacity claims against him and that quasi-judicial and/or qualified immunity bar the claims against him in his individual capacity. Mot. (Doc. 6) pp. 4-9. Dozier's argument with respect to the official capacity claims is well taken and they are due to be dismissed. However, construing the facts in the complaint in the light most favorable to Holley, Dozier is not entitled to absolute quasi-judicial or qualified immunity at this Rule 12(b)(6) stage of the litigation. Therefore, those claims should not be dismissed.

### A. Dozier is entitled to Eleventh Amendment immunity in his official capacity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment as barring suits by a citizen against his own state, under federal or state law, unless the state has waived its sovereign immunity or Congress has abrogated that immunity under § 5 of the Fourteenth Amendment. *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 10-15 (1890); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). "Waiver may not be implied." *Id.* Likewise, "Congress' intent to abrogate the States' immunity from

suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786 (1991)).

The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14 (date). The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citing Ala. Const. art. I, § 14.). Further, Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Thus, neither waiver nor abrogation applies here.

Official capacity suits are simply another way of pleading an action against the official's employing agency. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Dozier is the Elmore County Circuit Court Clerk and is considered a state official for Eleventh Amendment purposes. Compl. (Doc. 1) p. 3 ¶ 4; *see McDowell v. Sheppard*, 2021 WL 4341959, at *4 (M.D. Ala. Sept. 23, 2021) ("It is clear under Alabama law that Circuit Clerks and their employees carrying out official functions are state officials."); *see also Foster v. Etowah Cnty. Clerk's Office*, 2015 WL 4999667 (N.D. Ala. Aug. 21, 2015) ("Under Alabama law, circuit court clerks' offices are considered state agencies.") (citing Ala. Code § 12-17-80; *Stegmaier v. Trammell*, 597 F.2d 1027, 1037 (5th Cir. 1979)). Thus, Holley's claims for damages against Dozier in his official capacity are considered claims for damages against the state and are barred by the Eleventh Amendment. *See Flagg-El v. Houston Cnty. Comm'n for Cts. & Jail Standards*, 2020 WL 1310276, at *5 (M.D. Ala.

Mar. 2, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (finding that a Circuit Court Clerk was entitled to Eleventh Amendment immunity as to a § 1983 official capacity claim against her for damages).

In *Ex Parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity, holding that suits alleging a violation of the U.S. Constitution against a state official in his official capacity—for prospective injunctive relief—are not suits against the state, and thus do not violate the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign-immunity purposes."). "To determine whether *Ex Parte Young* permits a suit against a state official, [a court] 'need only conduct a straightforward inquiry into whether [the] complaint allege[s] an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Attwood*, 818 F. App'x at 867 (alterations in original) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The declaratory relief Holley seeks here does not fall within the *Ex Parte Young* exception. *Inter alia*, Holley asks this Court to declare his "right to be informed of the status of his [state] court case" and to find that Dozier "had the duty to truthfully inform him of the status of his [state] case." Compl. (Doc. 1) p. 12. He further asks this Court to declare his rights of access to the courts, due process, and equal protection, and to conclude that he "is entitled to prosecute his appeal" of the state court judgment. *Id*. at 13. These requests do not seek injunctive relief from an ongoing constitutional violation and are not

9

prospective in nature. Therefore, Holley's requests do not fall within the *Ex Parte Young* exception and are barred by the Eleventh Amendment. *See Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) (holding that *Ex Parte Young* did not apply to the declaratory relief sought by the plaintiff, which included requests that the court declare that the state court violated federal law in the past).

In sum, then, the Eleventh Amendment bars Holley's official capacity claims against Dozier for monetary and declaratory relief, and they should be dismissed.

### B. Holley's complaint survives Dozier's absolute quasi-judicial and qualified immunity defenses.

#### 1. Absolute quasi-judicial immunity.

"Clerks of the court have absolute immunity for a narrow range of acts 'they are specifically required to do under court order or at a judge's direction[.]'" *Darst v. Scriven*, 2023 WL 2401331, at *2 (11th Cir. Mar. 8, 2023) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)). This "quasi-judicial immunity" extends to those "who perform duties closely related to the judicial process, but only for actions taken within the scope of their authority." *Id.* at *2 (citing *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)). To determine whether quasi-judicial immunity applies, a court must perform "a *functional* analysis of the action taken by the official in relation to the judicial process." *Id.* (internal quotation mark omitted). "Thus, absolute quasi-judicial immunity applies when clerks act pursuant to court decrees or a judge's explicit instructions, but not when they perform routine duties like entering court orders or notifying parties." *Id.* (citing *Williams v. Wood*, 612 F.2d 982, 984-85 (5th Cir. 1980)).

Holley alleges that on April 15, 2022, he "inquired with [Dozier] about the status of his motion for reconsideration" and that Dozier "informed him that there would not be a ruling on this motion." Compl. (Doc. 1) p. 5 ¶ 15. As an initial matter, it appears that Dozier correctly informed Holley that the Elmore County Circuit Court was not going to rule on his motion for reconsideration. Indeed, after being informed by Dozier that the Elmore County Circuit Court would not rule on the motion, Holley immediately filed a motion for final judgment. Thus, it is unclear how Dozier's accurate statement to Holley violated Holley's rights or in any way contributed to his delay in discovering that his writ had been denied. Nonetheless, informing a party that the court will not rule on a motion is judicial in nature and as such falls under the cloak of absolute quasi-judicial immunity.

But Holley also contends that "[b]etween October 9, 2021[,] and January 31, 2022, *the defendants* repeatedly and falsely told [him] that his writ was still pending and withheld that a judgment had been entered." *Id*. p. 7 ¶ 27 (emphasis added). It is unclear whether Holley is asserting this allegation against Dozier or whether he is asserting it against the fictitious defendants named in the complaint. However, applying a liberal construction to Holley's pro se complaint and construing the factual allegations contained therein in the light most favorable to him, the undersigned must assume that, because Dozier is a named defendant, Holley is alleging that Dozier (and others) repeatedly informed him that his writ was pending when it was not. Informing parties about the status of a motion filed with the court is a routine administrative duty and not a judicial function. Therefore, that alleged conduct is not shielded by absolute quasi-judicial immunity.

11

### 2. Qualified immunity.

Dozier argues that—to the extent quasi-judicial immunity does not apply—his actions are shielded by qualified immunity. Mot. (Doc. 6) pp. 7-8. Construing Holley's complaint in the light most favorable to him and with the leniency granted to pro se litigants, the undersigned finds that qualified immunity should be denied at this time.

Qualified immunity completely protects government officials sued in their individual capacities unless their conduct violates "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (internal quotes and citation omitted). The Eleventh Circuit explains that "[u]nless the government official's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity." *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (2003). Qualified immunity is a powerful doctrine that provides a true "*immunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and her family's welfare personally—from doing their jobs." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Mitchell*, 472 U.S. at 526. Therefore, the Supreme Court has "repeatedly . . . stressed the

12

importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("[b]ecause of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage").

"The applicability of qualified immunity is a question of law to be decided by the court." *Willingham v. Loughman*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government official must first show that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts occurred. *Hinson*, 927 F.3d at 116; *Maddox*, 727 F.3d at 1120. Challenged actions are within the scope of an official's discretionary authority when they were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority. *Hinson*, 927 F.3d at 116; *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). In applying this test "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Gray*, 458 F.3d at 1303 (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Notably, discretionary authority includes "'actions that do not necessarily involve an element of choice.'" *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Thus, "for purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function." *Id.*

If a government official shows that he was acting within his discretionary authority when the alleged wrongful acts occurred, the burden shifts to the plaintiff to show that

qualified immunity is not appropriate. *Hardy*, 238 F. App'x at 439 (11th Cir. 2007). When determining if a plaintiff has met this burden, a court must first determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"A plaintiff may allege a violation of a clearly establish[ed] right by identifying '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Reaves v. City of Tuscumbia*, 2019 WL 8014318, at *5 (N.D. Ala. Dec. 9, 2019) (quoting *Hill*, 797 F.3d at 979). In performing the qualified immunity analysis, courts in the Eleventh Circuit look only to binding precedent from the United States Supreme Court, the Eleventh Circuit, and the Alabama Supreme Court to determine whether the asserted constitutional right was clearly established at the time of the alleged violation. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

Dismissal of a complaint under Rule 12(b)(6) based on qualified immunity is appropriate "where, (1) from the face of the complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established, (4) to

14

prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1023 (11th Cir. 2001). Importantly, the qualified immunity determination should be based on the "four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).

First, it is clear that Dozier was performing his official duties within the scope of his authority as Elmore County Circuit Court Clerk when he allegedly informed Holley about the status of his writ. Therefore, he was acting within his discretionary authority and qualified immunity is available to him. As such, the burden shifts to Holley to show that Dozier's actions, as alleged in the complaint, violated his clearly established constitutional rights. To do so, Holley points the Court to the former Fifth Circuit's opinion in *Williams v. Wood*, 612 F.2d 982 (11th Cir. 1980), as binding precedent.[4]

The facts in *Williams* are as follows. The plaintiff, proceeding pro se, filed a motion to alter or amend an adverse judgment he received in an action he filed in the Northern District of Florida. *Williams*, 612 F.2d at 982. The district court denied the motion on July 8, 1977, and a deputy clerk entered the order on the docket with a notation that she sent copies of the order to the parties. *Id*. The plaintiff alleged that he did not receive a copy of the order and that, when he called the clerk's office by telephone at an unspecified later date, the deputy clerk and another deputy clerk informed him that "the Court had not made

---

[4] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

15

a determination in the Cause" and that the clerk's office could not locate the file. *Id*. The plaintiff also claimed that the clerk promised that she would advise him when the order was entered. *Id*. On September 20, 1977, the plaintiff inquired again and was told that the order had been entered July 8 and that he had been sent a copy. *Id*. The plaintiff filed a notice of appeal on October 6, 1977, and the appeal was dismissed as untimely. *Id*.

The *Williams* plaintiff then filed suit against the clerk of the court, alleging that she maliciously deprived him of due process and equal protection by misinforming him about the status of his motion. *Id*. The clerk moved to dismiss the complaint, arguing that she was entitled to absolute quasi-judicial immunity. *Id*. The district court found that the clerk was entitled to quasi-judicial immunity and granted the motion, but the former Fifth Circuit reversed, finding that the clerk was not entitled to quasi-judicial immunity by performing functions such as "entering an order and notifying the parties" about the status of a case. *Id*. at 985. In reversing the matter, the *Williams* court further noted that the plaintiff had "alleged facts that, if true, would overcome [the clerk's] qualified immunity and justify relief." *Id*. at 986.

Here, applying a liberal construction to Holley's pro se complaint and construing his factual allegations in the light most favorable to him, the undersigned finds that Holley has alleged sufficient facts to overcome Dozier's assertion of qualified immunity at the motion to dismiss stage. Specifically, Holley alleges that "[b]etween October 9, 2021[,] and January 31, 2022, the defendants repeatedly and falsely told [him] that his writ was still pending and withheld that a judgment had been entered." Compl. (Doc. 1) p. 7 ¶ 27. This delay prevented Holley from timely filing an appeal. Dozier, as a defendant, must be

16

included in this allegation when construing the complaint in the light most favorable to Holley. This alleged misconduct is essentially identical to that found to defeat qualified immunity in *Williams*, and the undersigned is bound by this former Fifth Circuit decision.[5] Therefore, while Dozier's actions may ultimately be protected by qualified immunity when the facts are fleshed out at a later stage in the proceedings, it is premature to dismiss Holley's individual capacity claims at this time.

## VII.   CONCLUSION

For the reasons stated above, the undersigned Chief United States Magistrate Judge

RECOMMENDS that Dozier's Motion to Dismiss (Doc. 6) be GRANTED as to the official capacity claims against Dozier and DENIED as to the individual capacity claims against him. The undersigned further

RECOMMENDS that Holley's claims against fictitious defendants A-V be DISMISSED. Finally, it is

ORDERED that the parties shall file any objections to this Recommendation **on or before February 29, 2024**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of

---

[5] To be sure, law of qualified immunity has developed significantly since the 1980 *Williams* opinion and the former Fifth Circuit does not perform a full qualified immunity analysis. In addition, the *Williams* court's statement on qualified immunity can be regarded as dicta. Nevertheless, the undersigned feels constrained to follow this binding precedent finding that qualified immunity does not apply on essentially identical facts.

legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 15th day of February, 2024.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE